FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 0 2009

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ZAINUL S. KHIMANI and )
SADRUDIN H. KHIMANI, )
 )
    Plaintiffs, )
 )
 )   Civil Action No.
v. )
 )   1-09-CV-3488
WELLS FARGO ADVISORS, LLC, and )
ROBERT J. WALTON )
 )   JURY TRIAL DEMANDED
    Defendants. )
 )

## COMPLAINT

**COMES NOW** Plaintiffs, Zainul S. Khimani and Sadrudin H. Khimani and file this their Complaint against Wells Fargo Advisors, LLC, formerly Wachovia Securities, LLC and Robert J. Walton as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs, Zainul S. Khimani and Sadrudin H. Khimani, are citizens of the state of Georgia.

2.

Defendant Wells Fargo Advisors, LLC (hereinafter, "Wells Fargo") (formerly Wachovia Securities, LLC (hereinafter, "Wachovia")) is a Delaware

limited liability company. Wells Fargo is registered to do business in the state of Georgia and is subject to the jurisdiction of this Court. Wells Fargo's principal place of business is c/o CSC, 2711 Centerville Road, Wilmington, DE 19808. Wells Fargo may be served with a summons and copy of this complaint by service to their registered agent, Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

3.

Robert J. Walton is a citizen of the state of Georgia currently residing at 2452 Delbarton Place, Duluth, Gwinnett County, Georgia 30097 and is subject to the jurisdiction and venue of this Court. Robert J. Walton may be served with Summons and Complaint by service at his residence.

4.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, on the basis of federal questions. The matter in controversy exceeds the sum of $75,000.00, exclusive of costs and interest. Jurisdiction is also proper in this Court pursuant to 15 U.S.C. §78j(b) and 17 C.F.R. 240.10b-5 (hereinafter, "Rule 10b-5"). Further, because this Court has federal question jurisdiction over some of Plaintiffs claims, it may exert supplemental jurisdiction under 28 U.S.C. § 1367 over their state-law claims.

5.

Venue is proper in this District and this Court pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 78aa. Defendants are subject to personal jurisdiction in this District.

## BACKGROUND

6.

Plaintiffs had a $1-million certificate of deposit ("CD") held by Wachovia and due to mature in December of 2007.

7.

In view of the maturation of this CD, representatives of Wachovia directed Mr. and Mrs. Khimani to see Wachovia's financial advisor and employee, Robert J. Walton (hereinafter, "Walton").

8.

Mr. and Mrs. Khimani attended a series of meetings with Walton and Walter Booth, also an employee of Wachovia, at the Wachovia offices located at 1325 Satellite Blvd., Suwanee, Georgia.

9.

Mr. and Mrs. Khimani were 72 and 66 years of age at the time, respectively, and had neither the need nor desire to invest their monies in speculative securities.

10.

Mr. and Mrs. Khimani told Walton that they had had previous bad experiences in growth-oriented investments, and that is why they were previously 100% invested in cash and CDs.

11.

Walton knew that Mr. and Mrs. Khimani wanted to protect their principal, and informed them that only one account could guarantee them both a guarantee of income, as well as the opportunity for growth.

12.

To that end, Walton recommended the following investments:

(a).    $60,000 in a money market account with Wachovia Securities;

(b).    $600,000 in a Wachovia CD; and

(c).    $650,000 in an AXA/Equitable Variable Annuity with a 6.50% guaranteed income benefit.

13.

Walton sent an e-mail to Mr. and Mrs. Khimani's son and sole beneficiary, Husein Khimani on December 3, 2007 entitled "Investment Strategy" for Mr. and Mrs. Khimani (attached hereto and incorporated herein as **Exhibit A**).

14.

Walton specifically informed Mr. and Mrs. Khimani that the principal amount deposited would be guaranteed.

15.

In fact, Walton sent an e-mail to their son, Husein Khimani, that this AXA/Equitable Variable Annuity account would "provide a guaranteed minimum income benefit (GMIB) of 6.50% and will satisfy the remainder of [your] monthly budget. This account not only gives [you] the ability to take a higher income (6.50%) than [you] can get today from any CD, it also gives [you] the upside of the market. Any gains that the market realizes each year that above and beyond the 6.50% GMIB will be locked in to provide [you] with an even higher income the following year. [You] can enjoy this guaranteed income for years to come and if something were to happen to [you] the beneficiaries are guaranteed the greater of either the current market value of [sic] the initial <u>principal amount invested</u>." *[Emphasis supplied]*.

16.

Walton, again, recommended that they place $650,000 into this AXA/Equitable Variable Annuity, and assured them that the principal amount of

their investment, that is, the $650,000, would be guaranteed under a principal guaranteed benefit, as set forth in the attached e-mail.

17.

As an additional inducement, Walton told Mr. and Mrs. Khimani that they could try it for a year and reassess the strategy at the end of the year.

18.

Based on Walton's assurances and representations, Mr. and Mrs. Khimani agreed to this financial investment strategy proposed by Walton.

19.

It was not until later that the Mr. and Mrs. Khimani realized that Walton had apparently intentionally and maliciously misrepresented the characteristics of the AXA/Equitable Variable Annuity account to them.

20.

Mr. and Mrs. Khimani made numerous efforts to have Wachovia immediately ameliorate the situation, and to place their monies into an investment that would in fact guarantee their principal amount.

21.

Mr. and Mrs. Khimani made dozens of phone calls and numerous visits to the Wachovia Securities office, and were repeatedly assured that this situation

would be remedied and redressed, but to date, they have not received a favorable response, in fact, phone calls were not being returned.

22.

Mr. and Mrs. Khimani ultimately were forced to withdraw their investment at a loss of $237,335.87.

23.

Mr. and Mrs. Khimani, by and through their counsel, sent a demand notice to Wachovia on April 10, 2009 setting forth the facts as alleged above (see the Demand letter attached hereto and incorporated herein as **Exhibit B**).

24.

Wachovia denied Mr. and Mrs. Khimani demand by written letter dated April 27, 2009 (see the Wachovia letter attached hereto and incorporated herein as **Exhibit C**).

25.

Wachovia has since become Wells Fargo and Wells Fargo has also denied Mr. and Mrs. Khimani's written demand.

## **VIOLATION OF THE SECURITIES EXCHANGE ACT, RULE 10b-5**

26.

Mr. and Mrs. Khimani incorporate by reference paragraphs 1 through 25 as if fully set forth herein.

27.

Walton, an employee of Wachovia (now Wells Fargo) made misstatements or omissions to Mr. and Mrs. Khimani concerning the level of risk involved in investments made in the AXA/Equitable Variable Annuity account. Specifically, Defendants represented that Mr. and Mrs. Khimani's initial principal investment could not be lost.

28.

The level of risk in an investment, including the risk to the initial principal invested, was a material fact in Mr. and Mrs. Khimani's decision to invest in an account.

29.

Defendants knew that the statements Walton made with regard to the security of the initial principal invested were false.

30.

Defendants made misstatements and omissions about risk to the initial principal invested with reckless disregard.

31.

Defendants made unsuitable investment recommendations and misrepresentations given Mr. and Mrs. Khimani's respective ages and risk aversion.

32.

Mr. and Mrs. Khimani reasonably relied on the representations and assurances made by Walton, given that he was a financial advisor for Wachovia and that he knew their desire to protect their principal.

33.

Mr. and Mrs. Khimani, in reliance on Walton's representations and assurances, agreed to the financial investment strategy proposed by Defendants.

34.

The sale of AXA/Equitable Variable Annuity constitutes a purchase or sale of a security as defined by 15 U.S.C. §78c(10) and as the term is used in 15 U.S.C. §78j and Rule 10b-5.

35.

The conduct described herein, which was in violation of Rule 10b-5, financially rewarded Defendants at the expense of Mr. and Mrs. Khimani.

36.

As a result of the securities fraud, Mr. and Mrs. Khimani lost $237,335.87 of their principal investment.

## BREACH OF FIDUCIARY DUTY

37.

Mr. and Mrs. Khimani incorporate by reference paragraphs 1 through 36 as if fully set forth herein.

38.

Defendants owed a fiduciary duty of care and loyalty to Mr. and Mrs. Khimani.

39.

Defendants breached their duty of care and loyalty to Mr. and Mrs. Khimani by failing to provide them with accurate information as to the risk involved in the investments Defendants sold to Mr. and Mrs. Khimani.

40.

Defendants knew Mr. and Mrs. Khimani had an aversion to investments that put their initial principal investment at risk, yet recommended a course of action that, unbeknownst to Mr. and Mrs. Khimani, did put their initial principal investment at risk.

41.

Defendants not only recommended a course of action adverse to the desires and needs of their client, but also affirmatively misrepresented to Mr. and Mrs. Khimani that their initial principal investment was protected from any loss.

42.

As a result of Defendants misrepresentations and assurances, Mr. and Mrs. Khimani lost $237,335.87 of their initial principal invested.

## **FRAUD**

43.

Mr. and Mrs. Khimani incorporate by reference paragraphs 1 through 42 as if fully set forth herein.

44.

Defendants had a duty to disclose all material facts known by them to Mr. and Mrs. Khimani.

11

45.

Walton assured Mr. and Mrs. Khimani that the principal amount of their investment, that is, the $650,000, would be guaranteed under a principal guaranteed benefit if invested into the AXA/Equitable Variable Annuity.

46.

Walton's assurances and representations were made with the intention of inducing Mr. and Mrs. Khimani to act on them.

47.

Mr. and Mrs. Khimani were justified in relying on Walton's representations, as he was a financial advisor for Wachovia.

48.

Mr. and Mrs. Khimani, in reliance on Walton's representations and assurances, agreed to the financial investment strategy proposed by Walton.

49.

As a result of Defendants misrepresentations and assurances, Mr. and Mrs. Khimani lost $237,335.87 of their initial principal invested.

## **VIOLATION OF O.C.G.A. §10-5-50, et. seq.**

50.

Plaintiffs incorporate by reference paragraphs 1 through 49 as if fully set forth herein.

51.

Walton, on behalf of Wachovia, sold Mr. and Mrs. Khamani a security, namely an AXA/Equitable Variable Annuity.

52.

In connection with the sale and as an inducement for Mr. and Mrs. Khamani to deposit their money in the AXA/Equitable Variable Annuity, Walton represented to the Khamani's and stated that their principal investment would not be at risk.

53.

Walton knew that Mr. and Mrs. Khamani were risk averse.

54.

Walton's statement was a material fact to Mr. and Mrs. Khamani's decision to deposit $650,000 into the AXA/Equitable Variable Annuity.

55.

Walton's statement was untrue, misleading, fraudulent and deceitful.

13

56.

Mr. and Mrs. Khamani did not know that Walton's statement was untrue.

57.

Mr. and Mrs. Khamani were damaged in the amount of $237,335.87, plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney fees as determined by the court.

## RECOVERY OF EXPENSES OF LITIGATION

58.

Plaintiffs incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

59.

Wells Fargo has acted in bad faith with respect to the matters alleged herein. In addition, Wells Fargo has been stubbornly litigious and has caused Mr. and Mrs. Khimani unnecessary trouble and expense. As a result, Mr. and Mrs. Khimani are entitled to recover their expenses of litigation, including their attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## **PUNITIVE DAMAGES**

60.

Mr. and Mrs. Khimani incorporate by reference paragraphs 1 through 59 as if fully set forth herein.

61.

The foregoing acts of Defendants were intentional, willful, malicious, vexatious and in direct disregard of Mr. and Mrs. Khimani's rights as investors and consumers. Defendants' acts were undertaken with the specific intent to harm or reckless disregard such harm to Mr. and Mrs. Khimani and to unjustly enrich themselves at Mr. and Mrs. Khimani's expense.

WHEREFORE, Plaintiffs Mr. and Mrs. Khimani respectfully pray this Court:

    a.    Enter judgment in favor of Plaintiffs and against Defendants for the sum of $237,335.87, plus interest at the rate of 6.50% per annum computed on the amount of $650,000 beginning on December 10, 2007;

    b.    Enter judgment in favor of Plaintiffs and against Defendants for punitive damages in an amount to be determined by the Court;

c. Enter judgment in favor of Plaintiff's and against Defendants for the cost of this litigation, including attorney fees;

d. Enter such order and further relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of every claim and issue in this action.

This 9th day of December, 2009.

SEACREST, KARESH, TATE & BICKNESE, LLP

*/s/ Stacy P. Seidel*

Karsten Bicknese
Georgia Bar No.: 056826
Stacy P. Seidel
Georgia Bar No.: 375991
*Attorneys for Zainul S. Khimani and Sadrudin H. Khimani*

56 Perimeter Center East
Suite 450
Atlanta, GA  30346
PH:  (770) 804-1800
FX:  (770) 804-1400
EM:  kbicknese@sktblaw.com
     sseidel@sktblaw.com